```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**ROCKEY POPE,**

       Plaintiff,

v.                                     Civil Action No. 2:22-cv-00408

**3M COMPANY f/k/a MINNESOTA MINING
AND MANUFACTURING COMPANY, a
foreign corporation; MINE SAFETY
APPLIANCES COMPANY, LLC, a foreign
limited liability company f/k/a
MINE SAFETY APPLIANCES COMPANY, a
foreign corporation; EASTERN STATES
MINE SUPPLY COMPANY, a West Virginia
company; RALEIGH MINE & INDUSTRIAL
SUPPLY, INC., a West Virginia
corporation; and JOHN DOE ENTITIES,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the plaintiff's "Emergency Motion for Remand and for an Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1447(c)", filed September 26, 2022, ECF No. 3, and Motion for Leave to File Supplemental Authority, filed September 29, 2022, ECF No. 13.

### I. Background

Rockey Pope is a former coal miner who is afflicted by a disease of the lungs known as pneumoconiosis or silicosis, or, as it is commonly known, "black lung." Compl. ¶ 10.a, ECF No. 1-7. While working as a coal miner, Mr. Pope wore

respirators or dust masks (hereinafter "respirators") that were intended to protect against breathing the dust into the lungs that causes pneumoconiosis.  Id. ¶¶ 9, 10.  Mr. Pope wore respirators provided to him by his employers who, in turn, purchased them from mining supply companies.  Id. ¶¶ 6, 7.  Mr. Pope worked in coal mines beginning in 1976, and more particularly, he worked, from 1992 to 2009, at two mines collectively referred to as Mingo Logan.  Depo. of Rockey Pope ("Pope Depo.) 88:12-17, 132:10-18, 133:2-10, 191:24-193:21, 207:16-18, ECF No. 3-2.

On November 12, 2020, Mr. Pope, a domiciliary of West Virginia, initiated an action in the Circuit Court of Mingo County, West Virginia.  See Compl. ¶ 2.  Mr. Pope named as defendants 3M Company ("3M") and Mine Safety Appliances Company, LLC ("MSA").  Id. ¶¶ 3, 4.  3M is a Delaware corporation whose principal place of business is Minnesota.  Id. ¶ 4.  MSA is a Pennsylvania corporation whose principal place of business is Pennsylvania.  Answer of Def. MSA, ¶ 4, ECF No. 1-1, at 62.  3M and MSA are alleged to have designed, manufactured, sold, and distributed defective respirators.  Compl. ¶¶ 1, 3, 4.

Mr. Pope also named as defendants Raleigh Mine & Industrial Safety Supply, Inc., and Eastern States Mine Supply Company (the "Supplier Defendants").  Id. ¶¶ 1, 5, 6.  The

Supplier Defendants are West Virginia corporations. Id. ¶ 5. They allegedly sold and distributed respirators made by 3M and MSA to Mr. Pope's employers. Id. ¶¶ 1, 6, 7.

For nearly two years, the parties litigated in state court. ECF No. 1-1, at 2-12. The plaintiff reached a settlement agreement with MSA, who remains in this case only as a nominal party.[1] Notice of Removal 4 n.13, ECF No. 1. The remaining parties have nearly completed taking discovery. Pl's. Mem. of Law in Supp. Of Emergency Mot. for Remand and for an Award of Att'y's Fees and Costs Pursuant to 28 U.S.C. § 1447(c) 3, ECF No. 4. The defendants filed dispositive pre-trial motions, which are currently pending. Id. The plaintiff filed his pre-trial memorandum on September 23, 2022. ECF No. 1-14. Trial was set for October 31, 2022. ECF No. 4, at 1. On September 23, 2022, 3M filed a notice of removal, pursuant to 28 U.S.C. §§ 1441(a) and 1446(b)(3) and (c)(1). ECF No. 1, at 6.

3M contends that diversity jurisdiction exists under § 1332 inasmuch as the Supplier Defendants were fraudulently joined. Id. at 6-14. 3M also alleges that the

---

[1] The parties do not state precisely when this settlement agreement occurred. The fact of its occurrence is undisputed, however. See ECF No. 1, at 4 n.13; ECF No. 4, at 10.

plaintiff acted in bad faith to prevent removal within a year of commencing the case, as required by § 1446(c)(1).  Id. at 14-20.

## II.  Legal Standard

### A.  Removal procedure

Section 1441 of Title 28 of the United States Code grants defendants the right to remove an action from state to federal court.  28 U.S.C. § 1441(a).  Removal is proper to a federal court where original jurisdiction would lie.  Id.  Where a court's jurisdiction is based on diversity of citizenship pursuant to § 1332, jurisdiction exists only if the parties are completely diverse.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

Generally, a defendant may remove to federal court if a basis for federal jurisdiction is apparent from an initial pleading.  See 28 U.S.C. § 1446(b)(1).  A defendant may also remove "after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Id. § 1446(b)(3).  Under § 1446(b)(1) and (3), removal must occur within 30 days of receiving a document that provides a basis for removal.

In a diversity case, a defendant seeking to remove to federal court must clear an additional hurdle. Removal is not permitted "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Id. § 1446(c)(1).

The removing party has the burden of showing that jurisdiction exists. See Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370 (4th Cir. 2003). Due to federalism concerns raised by removal, courts "must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

B. Bad Faith Exception

A defendant alleging that a plaintiff acted in bad faith to prevent timely removal under § 1446(c)(1) "bears an arduous burden that requires evidence of forum manipulation." Holland v. CSX Transp., Inc., Civ. A. No. 2:21-CV-00377, 2021 WL 4448305, at *2 (S.D.W. Va. Sept. 28, 2021) (observing that "[a]lthough the Fourth Circuit has not deeply explored the contours of the bad faith exception, it is well settled that the plaintiff is the master of her complaint.") (Goodwin, J.).

In determining whether a plaintiff has engaged in bad-faith forum manipulation, courts in this district and elsewhere have applied the standard developed in Aguayo v. AMCO Insurance Company, 59 F.Supp.3d 1225 (D.N.M. 2014). See Holland, 2021 WL 4448305, at * 3; see also Ramirez v. Johnson & Johnson, Civ. A. No. 2:15-cv-09131, 2015 WL 4665809, at *4 (S.D.W. Va. Aug. 6, 2015) (Goodwin, J.). Under the Aguayo standard, the court first considers whether a plaintiff has actively litigated claims against the removal-spoiling defendant. 59 F.Supp.3d at 1228. If a plaintiff has failed to do so, bad faith may thereby be established. See id. If, on the other hand, a plaintiff has actively litigated his claims against the removal spoiler, he is entitled to a presumption of good faith, and the court proceeds to the second step of its analysis. Id. at 1228-29. At the second step, a defendant must produce direct evidence of the plaintiff's subjective bad faith. Id. at 1229.

III.  Analysis

As the removing party, 3M has the burden of showing that removal is proper and timely. See Sonoco, 338 F.3d at 370. This case having proceeded well beyond the initial pleadings, the first hurdle 3M must clear is the "other paper" requirement of § 1446(b)(3). Next, 3M must demonstrate that the

plaintiff acted in bad faith to prevent earlier removal.  See §
1446(c)(1).  Finally, for diversity jurisdiction to lie, 3M must
show that the plaintiff fraudulently joined the Supplier
Defendants.

        A.    Removal under § 1446(b)(3)

        3M must show that (i) it removed within 30 days
(ii) of receiving "a copy of an amended pleading, motion, order
or other paper" (iii) "from which it may first be ascertained
that the case is one which is or has become removable."  See §
1446(b)(3).

        The "other paper" 3M identifies is the deposition
testimony of Stirl Richard Smith, the corporate representative
for the Supplier Defendants.  ECF No. 1, at 3-4.  Mr. Smith is
the president of a "family of companies," that includes the
Supplier Defendants, a position he has held since approximately
1978.  Depo. of Stirl Richard Smith 26:6-27:7 ("Smith Depo."),
ECF No. 3-4.  The plaintiff does not dispute whether a
deposition may be an "other paper" for the purposes of §
1446(b)(3).  Timeliness is not disputed either.  Mr. Smith's
deposition occurred on September 22, 2022, and 3M removed the
case the following day.  The parties only dispute whether a
basis for removal is "ascertainable" from Mr. Smith's testimony.
ECF No. 1, at 4-5, 6-14; ECF No. 4, at 6-7, 12-18.

In a nutshell, 3M argues that Mr. Smith's testimony demonstrates that the plaintiff fraudulently joined the Supplier Defendants to prevent removal. The court excerpts relevant portions of this testimony below:

> [Cross-examination by Mr. Robert Akers, counsel for 3M] Q. And am I also correct that to your knowledge both Raleigh Mine and Eastern States never sold any respirators, including 3M respirators, to any of Mr. Pope's mining employees or employed – mining employers?
>
> A. I don't recognize those coal mines at all, and you're correct.
>
> Q. Okay. You don't recognize – or to take it a step further, Raleigh Mines or Eastern States, to your knowledge, never sold any type of products to any of Mr. Pope's mining employers; is that correct?
>
> A. That's correct.
>
> . . .
>
> Q. . . . Are you aware of the sale of any 3M product that – at all during the time that Eastern States and

Raleigh Mine Supply had supplied products to the coal industry?

A. I'm not aware of any.

Q. But as we sit here today and based on the search and records – the records search that you-all performed and the information that you know as being part of this company for the last 50 years, you don't have any record or knowledge of the sale of any 3M products to Mingo-Logan; is that correct?

A. I do not.

. . .

[Cross-examination by Mr. Glenn Huetter, counsel for the Supplier Defendants] Q. You indicated that Mingo-Logan was a customer but not a big customer.

A. Correct.

. . .

Q. And then Mingo-Logan, did they come to you whenever United Central didn't have something they needed?

A. Yes.

> Q. And as I understand it, that never involved respirators; is that correct?
>
> A. That's correct.

Smith Depo., at 88:11-23, 98:22-99:2, 107:21-108:5, 112:8-11, 112:18-24. 3M succinctly sums up the significance of Mr. Smith's testimony as follows: "Having never sold 3M products, and having never sold respirators to Pope's mining employers, the Local Stores cannot have injured Pope, as alleged." ECF No. 1, at 10. Thus, 3M concludes that Mr. Pope cannot maintain a products liability claim against the Supplier Defendants under West Virginia law, which proves they were fraudulently joined.

Mr. Pope disputes this conclusion, directing the court instead to testimony about the Supplier Defendants' business of selling products to various mines over the course of several decades. ECF No. 4, at 14-16. Mr. Smith testified that the Supplier Defendants sold "whatever" products various mining companies requested from them. Smith Depo., at 39:8-12. Their business included selling MSA-brand respirators as well as a disposable respirator, about which Mr. Smith could not recall additional details besides that it had "no colors." Id. at 46:11-16, 46:23-47:8, 111:3-7. The plaintiff similarly recalls wearing a "white disposable respirator," which he indicated was

a 3M respirator. Pope Depo., at 290:24-291:24. Although Mr. Smith did not recall selling 3M respirators, he acknowledged that he typically was not in charge of purchasing products requested by customers and did not see every box of respirators sold. Smith Depo., at 43:7-23. And his answers were generally in response to questions that asked, "to your knowledge."

The plaintiff also disagrees with 3M's conclusion that the Supplier Defendants never sold respirators to Mr. Pope's employers, in particular, at Mingo Logan. In Mr. Pope's deposition, he testified that he recalled wearing 3M and MSA respirators while he was employed there. Pope Depo., at 207:6-209:6. Mr. Smith testified that the Supplier Defendants began supplying Mingo Logan in 1991. Smith Depo., at 38:22-39:3, 99:16-18. In sum, Mr. Pope argues that his testimony about wearing 3M and MSA respirators during his long career as a miner, coupled with the Supplier Defendants' business with Mingo Logan that overlapped with Mr. Pope's employment there, together with the Supplier Defendants selling respirators to various mining companies, controvert Mr. Smith's denials of selling 3M or other respirators to Mingo Logan. ECF No. 16, at 2.

Information supporting removal pursuant to § 1446(b)(3) must be apparent from the four corners of the document in question. See <u>Lovern v. General Motors Corp.</u>, 121

F.3d 160, 162 (4th Cir. 1997). Courts have required "unequivocally clear and certain" evidence of removability to prevent protective removals and promote judicial economy. U.S. Airways, Inc. v. PMA Capital Ins. Co., 340 F.Supp.2d 699, 703-04 (E.D. Va. 2004) ("The purpose of this rule is to promote judicial economy by reducing 'protective removals' by defendants faced with an equivocal record.") (citing Bosky v. Kroger Tex., LP, 288 F.3d 208, 211) (5th Cir. 2002)); see also Jones v. West Virginia Division of Corrections and Rehabilitation, Civ. A. No. 2:21-CV-00645, 2022 WL 1019552, at *4 (S.D.W. Va. Apr. 5, 2022) (collecting cases) (Johnston, C.J.). A bright-line approach provides clear notice to defendants concerning the running of the 30-day clock to remove an action. Jones, 2022 WL 1019522, at *4 (citing Bosky, 288 F.3d at 211).

Mr. Smith, to his knowledge, denied ever selling 3M products or ever selling respirators to the mines identified by the plaintiff. This testimony provided sufficient information from which 3M could reasonably ascertain a basis for removal and that a colorable argument for fraudulent joinder existed.

Although Mr. Smith's testimony is central to 3M's fraudulent joinder argument, the court does not need to reach that issue. Before considering whether fraudulent joinder

occurred, the court must first make a finding of bad faith. See Ramirez 2015 WL 4665809, at *4 (declining to address fraudulent joinder argument where court did not make a finding of bad faith).[2]

### B. Bad faith under § 1446(c)(1)

3M removed this case well beyond the one-year time limit established by § 1446(c)(1). As it must, then, 3M argues that the plaintiff acted in bad faith to prevent it from removing this case earlier.

The "first step and central inquiry" of the Aguayo test consists of determining whether the plaintiff has actively litigated against a removal-spoiling defendant. Massey v. 21st Century Centennial Ins. Co., Civ. A. No. 2:17-cv-01922, 2017 WL 3261419, at *2. The court adopts a "wide-open view of what constitutes active litigation; any one form of active litigation satisfies the standard's first step." Aguayo, 59 F.Supp.3d at 1275.

---

[2] The court observes that the standards for bad faith under § 1446(c) and fraudulent joinder are not the same. Ramirez, 2015 WL 4665809, at *4 n.3. The bad-faith test applied by courts in this district primarily focuses on whether a party has actively litigated their claims. See id. By contrast, the focus of the fraudulent joinder doctrine is whether a colorable claim exists. Aguayo, 59 F.Supp.3d at 1264-65 ("fraudulent joinder doctrine, not the bad-faith exception, permits removal when the plaintiff lacks a colorable claim.").

3M argues that the plaintiff has failed to litigate his claims against the Supplier Defendants. ECF No.1, at 14-20. The plaintiff did not take discovery from the Supplier Defendants between filing his complaint on November 12, 2020, and September 2, 2022, when he noticed the Supplier Defendants' corporate representative. Id. at 3. Apart from this, the plaintiff has not served any interrogatories, requests for production, or requests for admissions from the Supplier Defendants, nor did he depose the fact witnesses identified by the Supplier Defendants. Id. 3M protests that the plaintiff only noticed the Supplier Defendants' deposition on the last day of discovery. Id. 3M dismisses this as nothing more than a "deadline-day" stunt to divert the court's attention from two years of relative inactivity. Id. at 17-18.

The plaintiff responds that the case progressed slowly as to all defendants due to the Covid-19 pandemic. ECF No. 4, at 2. As it concerns discovery, Mr. Pope highlights the "lengthy, detailed *duces tecums*," included as part of the deposition notice served on the Supplier Defendants. Id. When the Supplier Defendants did not produce any documents, the plaintiff sent follow-up correspondence on three occasions, eventually leading to the production of one document. Id. at 3. This culminated in Mr. Smith's deposition, which lasted

approximately two-and-a-half hours. ECF No. 3-4. Finally, the plaintiff stresses the fact that the Supplier Defendants remain in the litigation after nearly two years. ECF No. 4, at 10.

Any "non-token amount of discovery or other active litigation" generally is sufficient to raise a presumption of good faith. Aguayo, 59 F.Supp.3d at 1275. Here, the record demonstrates that the plaintiff did not simply piggyback on the efforts of others. See Holland, 2021 WL 4448305, at *3. Deadline day or not, the plaintiff noticed the deposition of Mr. Smith and the accompanying duces tecum produced a document. ECF No. 4, at 9. The plaintiff deposed Mr. Smith, a fact which "should almost always be entitled to the presumption of good faith." See Mullins v. Rish Equipment Co., Civ. A. No. 2:21-cv-00347, 2021 WL 4448296, at *4 (S.D.W. Va. Sept. 28, 2021) ("Depositions require time, money, and the preparation of the attorneys. Even a brief deposition can hardly be a token gesture.") (Goodwin, J.).

In addition, the Supplier Defendants remain in the litigation. The plaintiff's pre-trial memorandum addresses his claims against all the remaining defendants. See Pl.'s Pre-Trial Mem., ECF No. 1-5. The Supplier Defendants have pending dispositive motions in state court, arguing that the plaintiff cannot prove causation. ECF No. 1, at 5. They have also joined

3M's motion for summary judgment based on the statute of limitations. Id. The fact that the Supplier Defendants have not been dismissed distinguishes this case from a typical instance of bad-faith forum manipulation where a defendant is dropped shortly after the one-year deadline. See Ramirez, 2015 WL 4665809, at *3.

It is true that the plaintiff has not taken extensive discovery from the Supplier Defendants. But neither has 3M, nor did MSA. It is also true that this case has not been a model of expeditious litigation. Be that as it may, a plaintiff is afforded significant latitude in litigating his case as he sees fit, and the plaintiff need not use every discovery tool at his disposal. See Ramirez, 2015 WL 4665809, at *4 (remanding where plaintiff "did not exhaust all avenues of discovery at her disposal" but did take discovery from a removal spoiler). It is reasonable to attribute at least some of the delay in this case to the Covid-19 pandemic. Both sides, 3M included, have obtained discovery relatively recently. Mr. Pope noticed Mr. Smith's deposition before the close of discovery, not after. 3M protests that the Supplier Defendants could have refused to sit for the deposition, occurring as late as it did. ECF No. 15, at 10. They did not.

Based on the foregoing, the plaintiff has actively litigated his case and is therefore entitled to a presumption of good faith. Proceeding to step two of the Aguayo test, the court now considers whether 3M has produced sufficient evidence to rebut this presumption.

Step two of the Aguayo test requires the defendant to produce "strong, unambiguous evidence of the plaintiff's subjective intent, for which the plaintiff cannot offer any plausible explanation." Ramirez, 2015 WL 4665809, at *7 (quoting Aguayo, 59 F.Supp.3d at 1277). It will likely be the rare case where a defendant can produce evidence of a plaintiff's subjective bad faith, but decisions from this district demonstrate that this, too, is not an insurmountable hurdle. See Massey, 2017 WL 3261419, at *6-7 (finding bad faith where plaintiff's counsel asked diverse defendant whether the defendant would remove the case if a removal-spoiling defendant were dismissed).

In lieu of any unambiguous evidence of bad faith, 3M makes a pattern-and-practice argument. As 3M puts it, "[c]oal country is overrun with claims about respirators." ECF No. 1, at 1. According to 3M, plaintiffs in the typical such case join supplier defendants to serve as removal spoilers in product liability cases involving respirators. No discovery is

sought or obtained from these defendants. ECF No. 1, at 18-20. Indeed, 3M observes that "Pope's belated deposition [of Mr. Smith] is the first time *any* plaintiff has ever deposed them." Id. at 19. After the one-year deadline for removal passes, supplier defendants are said to have been dismissed by plaintiffs who have only taken supplier defendants to trial on one occasion. Id. at 11. In that lone case, the plaintiff did not oppose a motion for a directed verdict as to one supplier defendant and asked the jury to apportion one percent liability as to another. Id. at 11-12. Set against this backdrop, 3M "invites Pope to submit a plausible alternative explanation to bad-faith forum manipulation." Id.

The burden is on 3M. To rebut a presumption of good faith, the court requires unambiguous evidence of subjective bad faith. See Ramirez, 2015 WL 4665809, at *4; see also Aguayo, 59 F.Supp.3d at 1276 ("The Court wants a smoking gun or close to it."). That the plaintiff's case may resemble other cases is not sufficient. Even conceding the similarities between this action and other cases, 3M's argument distinguishes the plaintiff's case. See ECF No. 1, at 19. Here, Mr. Pope sought discovery from the two removal spoilers. This plaintiff, unlike other similarly situated plaintiffs, deposed the Supplier Defendants. Moreover, the Supplier Defendants remain in this

case after nearly two years. In consideration of the foregoing, the court is unable to find that the plaintiff acted in bad faith. Consequently, 3M's removal is barred by § 1446(c)(1).

IV. Conclusion

The plaintiff's motion to remand is GRANTED. The court hereby REMANDS this case to the Circuit Court of Mingo County.

Inasmuch as 3M has presented an arguable basis for its removal and opposition to remand, the court DENIES the plaintiff's request for attorneys' fees and costs.

The Clerk is directed to strike this case from the docket and transmit this order to all counsel of record and to any unrepresented parties.

ENTER: November 16, 2022

John T. Copenhaver, Jr.
Senior United States District Judge